IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-CV-39-RLV

| | |
|---|---|
| DONALD B. TEAGUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Memorandum and Order** |
| ) | |
| PATRICIA MEREDITH, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Patricia Meredith's Motion to Dismiss and Alternative Motion for Summary Judgment (Dkt. 7), filed May 13, 2010; Plaintiff Donald B. Teague's Response in Opposition (Dkt. 11), filed May 24, 2010; and Defendant's Reply (Dkt. 12), filed June 1, 2010.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

This action was commenced in The General Court of Justice, District Court Division, for Alexander County, North Carolina on March 19, 2010 by way of a civil complaint seeking injunctive relief in the form of a No Contact Order. The No Contact Order is based on N.C.G.S. § 50C-2 which provides relief for a "person who is a victim of unlawful conduct that [occurred in North Carolina]." N.C. Gen. Stat. § 50c-2(a)(1) (2011). Plaintiff also sought an ex parte, temporary restraining order under N.C.G.S § 50C-6. (Dkt 1-1, Ex. A, 5); N.C. Gen. Stat. § 50C-6

---

[1] Upon the request of pro se plaintiff Mr. Teague, the Court will strive to avoid, where possible, "legal jargon." (Dkt. 11, 1). A priority of this Court in every judgment rendered is to provide a clear and understandable explanation to all parties involved.

1

(2011). The state Magistrate Judge found that the Plaintiff did not satisfy the standard for issuance of a temporary restraining order[2] and scheduled a full hearing on the proposed order for March 24, 2010. (Dkt. 1-1, Ex. A, 5-6)

Before further action could be had in state court, Defendant removed this action to federal court pursuant to 28 U.S.C. §1441. (Dkt. 1, 1). This Court has jurisdiction pursuant to 28 U.S.C. § 1442 "because at all times relevant to the allegations of the complaint the Defendant was acting within the course and scope of employment by, and under color of her office with, a federal agency, the United States Veterans Administration." Id. The facts for the purposes of this Order are as follows.[3]

## FACTS

Plaintiff alleges in his complaint that Defendant "made unwanted sexual innuendos and remarks in passing. When [Plaintiff] did not respond, [Defendant] becane [sic] visibly agitated on more than one occasion." (Dkt. 1-1, 1). Plaintiff's complaint also alleges that the "[Defendant] used her position to totally destroy [Plaintiff's] life, and in such a way that [Plaintiff] can never erase or eradicate even after [Plaintiff's] passing." (Dkt. 1-1, 1). Plaintiff goes on to say, "I am sure that I am not the only one whos [sic] life [Defendant] has destroyed and she needs to be stopped now." (Dkt. 1-1, 1).

Defendant is a Licensed Social Worker for the Veterans Administration and met Plaintiff, a veteran and patient, on March 24, 2009 in her role as a social worker. Plaintiff attended ten

---

[2] "No immediate irreparable injury, loss or damage alleged to give rise to entry of ex parte order." (Dkt. 1-1, Ex. A, 5).

[3] All facts are presented in the light most favorable to Mr. Teague, the party opposing the motion to dismiss.

counseling sessions with the Defendant from March 24, 2009 to November 10, 2009; all of which took place at the Veterans Administrations's Community Based Outpatient Clinic in Hickory, North Carolina. (Dkt. 9, Ex. 1, 1).[4] Other than these counseling sessions, contact between the Defendant and the Plaintiff was limited to two telephone conversations taking place on March 2, 2010 and March 8, 2010. (Dkt. 9, Ex. 1, 2). Plaintiff had called the Defendant on March 1, 2010 and left a voice mail message and Defendant returned that call on March 2, 2010. Defendant then called the Plaintiff again on March 8, 2010 to "check on him." Id. The Defendant consulted with her supervisor prior to the March 8, 2010 phone conversation with Plaintiff, and also after the phone conversation. Based on these two telephone conversations with Plaintiff, and discussions with Defendant's supervisors, Defendant met with a state Magistrate Judge and discussed the contents of the telephone calls with Plaintiff. The Magistrate entered a court order on March 8, 2010. (Dkt. 9-1, Ex. 2, 1-3).[5]

On March 19, 2010, Plaintiff filed the complaint against the Defendant for a No Contact Order under North Carolina law. On May 13, 2010, Defendant moved to dismiss the claim pursuant to Rule 12(b)(6), and alternatively, because Defendant submitted exhibits with the motion to dismiss, the Defendant moved for Rule 56 summary judgment pursuant to Rule 12(d). Fed R. Civ. P. 12(b)6); Fed. R. Ci. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

---

[4] Exhibit 1 (Dkt. 9, 1-3) was placed under seal pursuant to an Order filed on May 4, 2010 to avoid placing certain private information regarding the Plaintiff on the public record.

[5] Exhibit 2 (Dkt. 9-1, 1-2) was placed under seal pursuant to an Order filed on May 4, 2010 to avoid placing certain private information regarding the Plaintiff on the public record.

On May 17, 2010, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised "that he has the right to file a response in opposition to" Defendant's Motion To Dismiss And Alternative Motion For Summary Judgment and that "[a]ny response filed by Plaintiff should be accompanied by a brief containing a concise statement of reasons for opposition and citation to the authorities upon which [Plaintiff] relies." (Dkt 10, 1). Plaintiff was additionally instructed that his "response may also be accompanied by exhibits, affidavits in opposition to the motion, or other responsive material." (Dkt. 10, 1).

Because the Plaintiff was given the opportunity to supplement the record with exhibits, affidavits and the like, and because this Court will take into consideration Defendant's additional submissions outside the pleadings, this motion will be treated as a Rule 56 motion for summary judgment. Fed. R. Civ. P. 56.

## STANDARD OF REVIEW

Summary judgment is proper where "the facts and the law will reasonably support only one conclusion." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quotation omitted). In determining whether this is the case, a court should examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" to decide if "there is no genuine issue of material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In considering a motion for summary judgment, the court is required to view the facts and inferences in the light

4

most favorable to the party opposing the motion. Anderson, 477 U.S. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). However, the party opposing summary judgment "may not rest upon the mere allegations or denials of [her] pleadings," Fed. R. Civ. P. 56(e), and a "mere scintilla of evidence" is insufficient to overcome summary judgment. Anderson, 477 U.S. at 249-50. Instead, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial does not exist where "the adverse party fails to bring forth facts showing that 'reasonable minds could differ' on a material point." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (citing Anderson, 477 U.S. at 250). "[N]either unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment." Id. (citations and quotations omitted).

## ANALYSIS

Plaintiff brings this claim based on N.C.G.S. § 50C-2. Under N.C.G.S. § 50C-2, "an action is commenced...by filing a verified complaint for a civil no-contact order...by [a] person who is a victim of *unlawful conduct* that occurs in this State." N.C. Gen. Stat. § 50C-2(a)(1) (emphasis added). "Unlawful conduct" is defined as:

> Unlawful conduct - [t]he commission of one or more of the following acts by person 16 years of age or older upon a person, but does not include acts of self defense or in defense of others:
> a. Nonconsensual sexual conduct, including single incidences of nonconsensual sexual conduct.
> b. Stalking.

N.C. Gen. Stat. § 50C-1(7).

Under North Carolina Law, "sexual conduct" and "stalking" are defined as:

Sexual conduct - Any intentional or knowing touching, fondling, or sexual

5

> penetration by a person, either directly or through clothing, of the sexual organs, anus, or breast of another, whether an adult or minor, for the purpose of sexual gratification or arousal. For purposes of this subdivision, the term shall include the transmission of semen.
> Stalking - On more than one occasion, following or otherwise harassing, as defined in G.S. § 14-277.3A(b)(2), another person without legal purpose with the intent to do any of the following:
> a. Place the person in reasonable fear either for the person's safety or the safety of the person's immediate family or close personal associates.
> b. Cause that person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and that in fact causes that person substantial emotional distress.

N.C. Gen. Stat. § 50C-1(4) and (6).

No elements of nonconsensual sexual conduct are alleged in any way in the complaint. Therefore Plaintiff's claim could be based on "stalking" as defined within the above statute; and particularly "harassment" as defined by N.C.G.S. § 14-277.3A(b)(2)[6] as there are no allegations of Defendant "following" Plaintiff.

The elements that must be proven under Plaintiff's claim are: (1) harassing as defined by N.C.G.S. § 14-277.3A(b)(2); (2) without legal purpose[7]; (3) with the intent to place in reasonable fear or the intent to cause substantial emotional distress by way of fear of death, bodily injury, or continued harassment that, in fact, results in substantial emotional distress; (4) on more than one occasion. Based on the submitted documents and materials, a reasonable jury could not conclude

---

[6] As referenced by the above statute, harassing is defined as: "Knowing conduct, including written or printed communication or transmission, telephone, cellular, or other wireless telephonic communication, facsimile transmission, pager messages or transmissions, answering machine or voice mail messages or transmission, and electronic mail messages or other computerized or electronic transmissions directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat § 14-277.3A(b)(2).

[7] The "*without legal purpose*" requirement of element (2) is similar to a requirement found in the statutory definition of "harassing" under N.C.G.S. § 14-277.3A(b)(2). Under N.C.G.S. § 14-277.3A(b)(2) harassing is defined as tormenting, terrorizing, or terrifying another person with "*no legitimate purpose.*" Therefore, a claim of "unlawful conduct" under N.C.G.S. § 50C-2 (the statute providing for civil no contact orders which is controlling in this case), based on stalking by way of harassment, will be defeated by a legal purpose *or* a legitimate purpose.

that the Defendant has stalked the Plaintiff because Plaintiff fails to present sufficient evidence in support of elements (1) - (3).

Defendant produces a declaration from Lori Zaferatos, Interim Chief of Social Work at the Department of Veterans Affairs in Salisbury, North Carolina which oversees the outpatient clinic in Hickory, North Carolina. Lori Zaferatos states in her Declaration that all interactions between the Defendant and the Plaintiff were limited to the Defendant's role as a Licensed Social Worker for the Veteran's Administration, and Plaintiff's position as a veteran and patient. (Dkt. 9, 1); (Dkt. 1-2, Ex. A, 1). This social worker-patient relationship was limited to ten counseling sessions and two subsequent phone conversations, all within the scope of employment of Defendant's position as a Licensed Social Worker with the Veteran's Administration. *See supra* pp. 2-3.

1. **Harassment**

Plaintiff's complaint fails to allege that he was "stalked" or "harassed." Plaintiff's complaint succinctly states that Defendant made "unwanted sexual innuendos *in passing*." (Dkt. 101, Ex. A, 1) (emphasis added). Plaintiff offers no explanation or evidence demonstrating how Defendant's alleged actions "torment[ed], terrorize[d], or terrifie[d]" him as required by N.C.G.S. § 14-277.3A(b)(2). Plaintiff only claims that Defendant's alleged actions have "destroyed his life", but again fails to provide any evidence demonstrating the serious repercussions that would be expected to accompany such destruction of his life. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009) (citing Bell Atlantic Corp. v. Twombly, 505 US 544, 555 (U.S. 2007) (stating that a proper complaint "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation.").

## 2. **Without Legal Purpose/No Legitimate Purpose**

The unrefuted declaration of Lori Zaferatos states that all interactions between Plaintiff and Defendant were limited to Defendant's role as a Licensed Social Worker for the Veteran's Administration, and Plaintiff's position as a veteran and patient. Supra pp. 2-3. Interactions between Defendant as a social worker, and Plaintiff as a patient qualify as legal and legitimate purposes. Plaintiff's complaint contains no factual allegations contrary to what is stated in Lori Zaferatos' Declaration, and Plaintiff has failed to refute the Declaration of Lori Zaferatos even after being advised of his right to do so.

## 3. **Intent to Cause Reasonable Fear for Safety or Substantial Emotional Distress**

To support a claim for relief, Defendant must have had the intent to cause Plaintiff to fear for his personal safety and Plaintiff must have, in fact, reasonably feared for his safety; or alternatively, Defendant must have had the intent to cause substantial emotional distress and Plaintiff must have, in fact, suffered substantial emotional distress.[8]

Plaintiff fails to allege or provide any documents or materials tending to show the specific intent of Defendant to cause Plaintiff to have a reasonable fear for his safety or to cause him substantial emotional distress. Similarly, Plaintiff fails to allege or provide any evidence tending to show that Plaintiff, in fact, reasonably feared for his personal safety or suffered substantial emotional distress resulting from the alleged statements made by Defendant.

---

[8] In Ramsay v. Harman, 191 N.C. App 146 (N.C. Ct. App. 2008), the North Carolina Court of Appeals explained, "[t]he statute requires...defendant's harassment [to be] accompanied by the *specific intent* to either: (1) place the person in fear for their [sic] safety, or the safety of their [sic] family or close personal associates or (2) cause the person substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and in fact cause that person substantial distress." Ramsay v. Harman, 191 N.C. App. 146, 149 (N.C. Ct. App. 2008) (citing N.C. Gen. Stat. § 50C-1(6)) (emphasis added).

The Court faced a similar situation in Ramsay where "the record [was] wholly devoid of any evidence that tend[ed] to show the messages published on Defendant's website were intended to and, in fact, caused Plaintiffs to suffer substantial emotional disress as is required by N.C.G.S. § 50C-2." Ramsay, 191 N.C. App. at 151. The lack of evidence in Ramsay was dispositive. As a result the North Carolina Court of Appeals vacated the lower court's order granting the no contact order. Id. at 152.

The Complaint states that Defendant has "totally destroyed [Plaintiff's] life." (Ex. A, Dkt. 1-1, 1). The destruction of an individual's life would be a serious matter. It might even be a fair description of one who had suffered over time a reasonable fear for his personal safety or one upon whom substantial emotional distress had been inflicted. However, this conclusory allegation is wholly unsupported by facts. Plaintiff fails to offer any documents or materials demonstrating the fact or the cause of a reasonable fear for his personal safety or a condition of substantial emotional distress resulting from Defendant's actions.

4. **More Than One Occasion**

Plaintiff's complaint states. "[t]he defendant made unwanted sexual innuendos and remarks in passing. When I did not respond, she becane [sic] visibly agitated on more than one occasion." (Dkt. 1-1, Ex. A, 1). The frequency or setting in which these alleged remarks and agitation took place is not clearly stated in any of the documents or materials. Without more detail as to Defendants's alleged offensive remarks or the reason for the alleged effect on Plaintiff, the Plaintiff's complaint does not state a claim for relief, much less present genuine issues of material fact for trial. Plaintiff was invited to provide this detail but has failed to do so. The unrefuted Declaration of Lori Zaferatos states that contact between Plaintiff and Defendant

9

was limited to 12 occurrences (ten counseling sessions and two phone conversations), all within the scope of employment of Defendant as a Licensed Social Worker. Supra pp. 2-3. Nowhere does Plaintiff explain or even suggest how the normal or customary content of such communications between the parties crossed the line so as to be injurious to Plaintiff. The frequency ("on more than one occasion") of encounters not shown to be objectionable for purposes of a motion for summary judgment is immaterial and legally inconsequential.

5. **Immunity**

In addition to the above stated reasons, Defendant's interactions with Plaintiff are immune from civil action as a matter of law based on the details of the court order entered on March 8, 2010, applicable statutory provisions[9], and the Declarations of the Defendant and Lori Zaferatos**.** (Ex. 1, Dkt. 9); (Ex. B, Dkt.1-2)

## CONCLUSION

This Court finds that Summary Judgment in favor of Defendant is appropriate because Plaintiff has failed to present a genuine issue of material fact on any of the elements required under N.C.G.S. § 50C-2; and because Defendant's actions are immune from civil liability.

---

[9] Citation to the statutory provision providing immunity is omitted for the purpose of preserving the privacy of the Plaintiff. The applicable statutory provisions are discussed and can be found in Exhibit 3 Document 9-2, pages 1-3.

# ORDER

**WHEREFORE**, for the Foregoing Reasons, Defendant's Motion to Dismiss is **DENIED,** and Defendant's Alternative Motion for Summary Judgment is **GRANTED.**

Signed: July 14, 2011

Richard L. Voorhees
United States District Judge